IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2006

## STATE OF TENNESSEE v. LOUIS BERNARD WILLIAMS

**Direct Appeal from the Circuit Court for Madison County**
**No. 03-645     Donald H. Allen, Judge**

---

**No. W2005-01405-CCA-R3-CD  - Filed June 30, 2006**

---

The defendant, Louis Bernard Williams, was convicted by a Madison County jury of possession of more than one-half ounce of marijuana with the intent to sell or deliver, a Class E felony, and possession of drug paraphernalia and evading arrest, both Class A misdemeanors.  The trial court sentenced him as a Range II, multiple offender to four years in the Department of Correction for the felony conviction and to eleven months, twenty-nine days in the county jail for each of the misdemeanor convictions and ordered that the evading arrest sentence be served consecutively to the sentence for possession of marijuana.  The trial court also ordered that the defendant serve the sentences consecutively to his eight-year sentence for a felony for which he had been on probation at the time of the instant offenses and consecutively to a nine-year sentence he had received for additional offenses he committed while out on bond in the instant case.  The defendant raises three issues on appeal: (1) whether the evidence was sufficient to sustain his convictions; (2) whether the trial court erred in excluding the hearsay statement of a man who claimed ownership of the drugs; and (3) whether the trial court erred in not declaring a mistrial when a law enforcement officer referred at trial to the defendant's having been on probation at the time of the offenses.   Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender (at trial and on appeal), and Amanda Heard, Assistant Public Defender (at trial), for the appellant, Louis Bernard Williams.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; James G. Woodall, District Attorney General; and Rolf G. Hazlehurst, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

# FACTS

On February 3, 2003, Madison County Drug Task Force officers arrived at the defendant's residence, located at 317 Linden Street in Jackson, to execute a search warrant. Upon seeing the officers, the defendant and another man, Kenneth Hill, fled from the west side of the building. Two officers pursued and caught Hill, but the defendant managed to escape. In their search of the premises, the officers uncovered, among other things, several plastic bags containing a large amount of marijuana, a set of digital scales, a set of mechanical scales, and approximately two grams of cocaine. The defendant was subsequently arrested and indicted for possession of more than one-half ounce of marijuana with the intent to sell, possession of more than one-half ounce of marijuana with the intent to deliver, possession of more than .5 grams of cocaine with the intent to sell, possession of more than .5 grams of cocaine with the intent to deliver, possession of drug paraphernalia, and evading arrest.

At trial, Drug Task Force Investigator Terry Hopper testified that when he and his fellow officers knocked at the door of the defendant's residence to announce their presence and purpose, one of the members of their team, Sergeant Hardaway, saw two men fleeing from the west side of the building. He said that Sergeant Hardaway and Investigator Smith pursued and caught one of the men, Kenneth Hill, but the second man, whom they recognized as the defendant, got away. Investigator Hopper testified that no one was inside the residence when he and his team entered. He stated that the first item he found was a briefcase beside the refrigerator in the kitchen. Inside the briefcase, he found four gallon-size plastic bags and three small plastic bags, all of which contained marijuana; a set of digital scales; and a set of "finger scales or mechanical scales." In addition, officers discovered a small amount of marijuana in the living room closet and 2.5 grams of crack cocaine in the ashtray of a vehicle parked in front of the residence. Investigator Hopper testified that the digital and mechanical scales were items used in the drug trade "to weigh out illegal substances," that the marijuana was packaged in a manner indicating that it was intended for resale, and that the amount of cocaine found in the vehicle suggested that it was also intended for resale rather than personal use.

On cross-examination, Investigator Hopper acknowledged that the marijuana was located in common areas of the house and that there was nothing to indicate whether the defendant lived alone or with someone else. He further acknowledged that the defendant was not identified by name on the search warrant, which listed only "John Doe, a black male." On redirect examination, he testified that the task force officers had previously discussed the defendant as a suspect and that he fully anticipated finding the defendant at the residence.

Investigator Wes Stilwell of the Jackson Police Department testified that he was assigned to the Metro Narcotics Unit and was a participant in the discovery of the marijuana and scales found at the defendant's residence. He, like Investigator Hopper, explained why the scales and individually packaged bags indicated that the marijuana was intended for resale rather than personal use. He also agreed that the drug task force had discussed during their pre-warrant briefing their expectation of finding the defendant at the residence. On cross-examination, he acknowledged that the marijuana

was in the common areas of the home and that it was possible that someone other than the defendant resided at the address.

Sergeant William Carneal of the Madison County Sheriff's Department, who said he was assigned to the Metro Narcotics Unit, testified that his role in the execution of the search warrant involved the discovery of the crack cocaine in the ashtray of a vehicle parked in front of the residence. Explaining that crack cocaine is usually sold for personal use by the rock, which consists of anywhere from .1 to .2 grams, he testified that in his opinion the cocaine found in the vehicle was intended for resale. On cross-examination, Sergeant Carneal acknowledged that the vehicle was parked on the street and not on the property of the residence.

Jackson Police Officer Matthew Hardaway testified that he was assigned to the Metro Narcotics Unit and participated in the search of the defendant's residence. He said that, prior to their execution of the search warrant, the Drug Task Force held a pre-briefing where intelligence on the defendant, including his photograph, was presented. Officer Hardaway stated that, as they approached the residence, he looked around the corner and saw the defendant and another man standing at the side of the house. He said that as the team members yelled "Police" and "Search Warrant," the defendant turned around, looked, and then took off running. Officer Hardaway identified the defendant in the courtroom and expressed his certainty that he was the same man he saw fleeing from the residence at the time the officers arrived to execute the search warrant.

Deputy Brenda McNeil of the Madison County Sheriff's Department, who said she was assigned to the Metro Narcotics Unit as the Evidence Custodial Officer, described her role in transporting the evidence collected in this case to the Tennessee Bureau of Investigation for testing. Brian Eaton, a chemist who was accepted by the court as an expert in the field of drug identification, testified that he analyzed the evidence involved in the case and determined that the plant material consisted of 735.4 grams of marijuana and that the rocklike substance consisted of 2 grams of cocaine.

The defendant elected not to testify and rested his case without presenting any proof. Following deliberations, the jury found him guilty of possession of marijuana with the intent to sell and with the intent to deliver, which the trial court subsequently merged into a single conviction; possession of drug paraphernalia; and evading arrest. The jury found the defendant not guilty on the counts of the indictment charging possession of cocaine with the intent to sell and deliver.

## ANALYSIS

### I. Sufficiency of the Evidence

As his first issue, the defendant challenges the sufficiency of the evidence in support of his convictions. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime charged

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). This rule is applicable to findings of guilt based on circumstantial, as well as direct, evidence. See State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895, 897 (1961).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). Neither does this court substitute its inferences for those of the trier of fact in circumstantial evidence cases. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). To the contrary, we are required to give the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences that can be drawn from it in support of the convictions. Cabbage, 571 S.W.2d at 835.

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant, who stipulated at trial that the residence was his, relies on the fact that the drugs and drug paraphernalia were found in common areas to argue that the evidence was insufficient to prove beyond a reasonable doubt that he possessed the marijuana and drug paraphernalia found in the home. He makes no argument against his conviction for evading arrest. The State responds that the evidence was sufficient for the jury to infer the defendant's constructive possession of the drugs and drug paraphernalia found in the home. We agree with the State.

To convict the defendant of possession of marijuana with the intent to sell or deliver, the State had to prove that the defendant knowingly possessed not less than one-half ounce nor more than ten pounds of marijuana with the intent to sell or deliver it. Tenn. Code Ann. § 39-17-417(a)(4),(g)(1) (2003). To convict him of possession of drug paraphernalia, the State had to show that he used or possessed with the intent to use drug paraphernalia to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." Tenn. Code Ann. § 39-17-425(a)(1) (2003). Finally, to convict him of misdemeanor evading arrest, the State had to prove that the defendant intentionally fled from a person he knew to be a law enforcement officer while knowing that the officer was attempting to arrest him. Tenn. Code Ann. § 39-16-603(a)(1)(A) (2003).

Possession of drugs and drug paraphernalia may be constructive as well as actual. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984) (citation omitted). An individual's mere presence in an area in which drugs are found, or association with another individual in possession of drugs, is not, alone, sufficient to establish constructive possession. Shaw, 37 S.W.3d at 903 (citing State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); Cooper, 736 S.W.2d at 129). However, possession of the premises in which contraband is found creates an inference that the possessor had possession of the contraband. See Transou, 928 S.W.2d at 956; Armstrong v. State, 548 S.W.2d 334, 336 (Tenn. Crim. App. 1976).

In this case, the defendant stipulated that he was in possession of the premises where the drugs and drug paraphernalia were found. Moreover, the law enforcement officers testified that the defendant was the suspect they anticipated and expected to find at the residence and that he fled when the officers arrived and announced that they were there to serve a search warrant. No one else was in the residence when the police officers entered, and there was no evidence to indicate that anyone else shared the residence with the defendant. From these circumstances, a rational trier of fact could have reasonably inferred that the defendant possessed the drugs and drug paraphernalia found in his home. Furthermore, from the amount of marijuana present, the manner in which it was packaged, and the presence of digital and mechanical scales in the home, a rational trier of fact could have reasonably concluded that the defendant's possession of the marijuana was for resale rather than for his personal use. We, therefore, conclude that the evidence was sufficient to convict the defendant of possession of marijuana with the intent to sell or deliver, possession of drug paraphernalia, and evading arrest.

## II. Exclusion of Hearsay Statement

The defendant next contends that the trial court erred in excluding the hearsay statement of Michael Stewart, a man who apparently approached Investigator Hopper sometime after the defendant's arrest and gave a statement claiming that the drugs and drug paraphernalia found in the defendant's home belonged to him. The defendant argues that the statement was admissible under the declaration against penal interest exception to the rule against hearsay. The State argues, among other things, that the defendant has waived the issue by failing to make a proffer of Stewart's statement or of Investigator Hopper's testimony with respect to the circumstances under which the statement was made and that the trial court properly denied the State's motion in limine to exclude the statement as inadmissible hearsay.

We agree with the State that the defendant has waived the issue by his failure to insure a complete record for appellate review. It is the defendant's duty to prepare a fair, accurate, and complete record on appeal to enable meaningful appellate review. See Tenn. R. App. P. 24(b).

When necessary parts of the record are not included on appeal, we must presume that the trial court's ruling was correct. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Although the trial court apparently had Stewart's statement before it at the hearing on the motion in limine, the statement was not included in the record before this court. Indeed, as the State points out, the only information we have in the record about the statement or the circumstances under which it was made consists of remarks by the trial court and counsel at the hearing on the motion in limine. During the hearing, the prosecutor explained:

> Basically, [Michael Stewart] went to Metro Narcotics and talked with Investigator Hopper and said that -- he claimed responsibility for the drugs. Investigator Hopper didn't feel he was credible and was under the impression the man was probably suffering from a mental ailment. And he was never a suspect. Never arrested.

We further agree with the State that, even if not waived, the record does not show that the trial court erred in excluding the statement as inadmissable hearsay. As a general rule, questions concerning the admissibility of evidence rest within the sound discretion of the trial court and an appellate court will not interfere with the trial court's discretion absent a clear showing on the face of the record that the trial court abused its discretion. State v. Maclin, 183 S.W.3d 335, 342 (Tenn. 2006), pet. for cert. filed (Apr. 17, 2006). Tennessee Rule of Evidence 804 provides, in pertinent part:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (3) Statement Against Interest.--A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Tenn. R. Evid. 804(b)(3). From the statements of defense counsel and the trial court at the hearing on the motion in limine, it appears that defense counsel had been trying, without success, to locate Stewart for at least a year. Thus, he arguably qualified as an unavailable witness under the rule. However, the circumstances under which the statement was made do not support a finding that the statement was sufficiently reliable to be admitted as a declaration against Stewart's penal interest. As explained by Neil P. Cohen et al., Tennessee Law of Evidence § 8.36[5] (5th ed. 2005), the "cornerstone" of the declaration against interest exception to the rule against hearsay is that

> a reasonable person similarly situated to the declarant would not have made the statement unless the reasonable person believed it was true. In turn, this statement

means that a reasonable declarant would have realized it was against his or her interest. The important time is when the statement was made.

Rule 804(b)(3) does not specifically provide that the declarant must have personally known that the statement was against his or her interests when it was made. However, this knowledge is the reason the hearsay statement is viewed as sufficiently reliable to be admitted, and the evidence should not be admitted if it is established that the declarant did not know that the statement was harmful. For example, if the declarant actually believed that he or she was saying something that would be helpful, reliability is questionable and the statement should not be admitted under this hearsay exception.

Assuming that the prosecutor accurately stated the circumstances under which the statement was made, there is no indication that Stewart, who apparently appeared to Investigator Hopper as in some way mentally deficient, made the statement with the realization that it could expose him to criminal prosecution. We conclude, therefore, that even if the issue were not waived due to the defendant's failure to provide a complete record, he would not be entitled to relief.

### III. Failure to Declare Mistrial

As his last issue, the defendant contends that the trial court erred by not *sua sponte* declaring a mistrial when Investigator Hopper referred to documents indicating that the defendant was on probation at the time of the offenses. During his direct examination testimony, Investigator Hopper was asked to describe various papers he had found in the defendant's kitchen drawers. As he did so, he testified that one item was a receipt where the defendant was "paying off some Court cost . . . or some probation charge or something" and that a second item "talk[ed] about" the defendant's probation officer having "sent him a letter." Defense counsel objected to any reference to the defendant's probation status, offered to stipulate that the residence was the defendant's, and requested that the trial court issue a curative instruction to the jury. At no time did defense counsel request a mistrial.

The defendant now argues that "manifest necessity" required that a mistrial be declared to avoid the unfair prejudice that the information about the defendant's probation status caused to his case. We respectfully disagree. Whether to declare a mistrial lies within the sound discretion of the trial court, and its decision in this regard will not be overturned on appeal absent a showing of an abuse of discretion. State v. Land, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000). A mistrial should be declared in a criminal case only when something has occurred that would prevent an impartial verdict, thereby resulting in a miscarriage of justice if a mistrial is not declared. See id. (citing State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994)); State v. Jones, 15 S.W.3d 880, 893 (Tenn. Crim. App. 1999) (citing Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977)). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (quoting Arnold, 563 S.W.2d at 794).

No such manifest necessity for the declaration of a mistrial existed here. The jury never saw the receipt and letters that referred to the defendant's probation status, as the trial court excluded them as exhibits. The court also instructed the jury to disregard any mention of the defendant's having been on probation. As the State points out, juries are presumed to follow the instructions of the trial court, see State v. Smith, 893 S.W.2d 908, 914 (Tenn. 1994), and the jury in this case demonstrated its ability to weigh the evidence impartially by acquitting the defendant of the cocaine charges. We conclude, therefore, that the trial court did not err in not *sua sponte* declaring a mistrial.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE